Flora Belle OLDAKER, Appellant,

v.

The TRAVELERS INSURANCE COMPANY, Appellee.

No. 6316.

Court of Civil Appeals of Texas, El Paso.

June 20, 1973.

Warren Burnett, Associated, Richard J. Clarkson, Ruff Ahders, Odessa, for appellant.

Turpin, Smith, Dyer, Harman & Osborn, Max N. Osborn, Midland, for appellee.

OPINION

RAMSEY, Chief Justice.

This is a suit seeking equitable reformation of a policy of insurance. Flora Belle Oldaker, Plaintiff-Appellant, brought suit against The Travelers Insurance Company, Defendant-Appellee, seeking to recover for uninsured motorist's benefits under a policy which had been written without such coverage being provided. Trial was before a jury. At the conclusion of Plaintiff's case, the Court, on Defendant's motion, withdrew the case from the jury and entered judgment for the Defendant. We affirm.

The facts reveal that the Plaintiff's son, Clarence Melvin Oldaker, was formerly the owner of a 1963 Pontiac. The Defendant issued an insurance policy on that car in April, 1970. At that time, Oldaker executed a rejection of uninsured motorist coverage. In June of 1970, Oldaker bought a 1969 Plymouth and requested that it be substituted on the policy for the Pontiac. Oldaker stated that he informed Defendant's agent that he wanted the Plymouth "fully covered." In April, 1971, and within the policy year, the Plaintiff was a passenger in the Plymouth when it was involved in a collision with an alleged uninsured motorist. Plaintiff alleges that the failure of the Defendant to issue its policy with uninsured motorist coverage was due either to fraud or mutual mistake which entitles Plaintiff to reformation of the policy in order to provide these benefits.

The Plaintiff complains of the trial Court's action in withdrawing the case from the jury and denying reformation when there is some evidence of fraud or mutual mistake.

The Defendant's agent testified that he does not recommend uninsured motorist coverage to his clients, and the gist of his testimony was to the effect that he discourages their taking such coverage. The agent did testify that he recommended medical coverage and would recommend uninsured motorist coverage if the client did not take medical coverage.

■ Oldaker testified that he signed the rejection slip for the uninsured motorist coverage and that he knew what he was signing. No conversation was had thereafter between Oldaker and the agent regarding the uninsured motorist coverage. The agent admitted that though he explained to his customers how to reject such coverage, he did not explain the procedure of getting it placed in the policy after rejection. Oldaker testified that he read the policy when he first got it and thought he understood it pretty well. When Oldaker purchased the 1969 car he testified that he requested "full coverage." Counsel for both parties interrogated Oldaker at length as to what he meant by "full coverage." His answers were to the effect that he wanted the car insured against anything that could happen to it so that he could not be sued and that he understood full coverage to mean that the insurance protection would cover the automobile and anyone in it. There was no discussion between Defendant's agent and Oldaker as to what he intended by "full coverage." The agent did not recall any conversation with Oldaker about the "full coverage." For purposes of this opinion, however, this Court must view the testimony in the light most favorable to the Plaintiff and assume that Oldaker requested "full coverage," to which Defendant's agent replied, "Okay." McRoy v. Riverlake Country Club, Inc., 426 S.W.2d 299 (Tex.Civ.App.—Dallas 1968, ref'd n.r.e.).

When the policy was originally issued, the parties were in agreement as to coverage. Oldaker was well aware of his rejection of uninsured motorist coverage and

knew that this was not included. Oldaker, when advising Defendant's agent of his purchase of another automobile, did not request any particular coverage, but merely testified that he told the agent that he wanted the newer automobile "fully covered." In examining the statement of facts, Oldaker still does not testify that he was intending to specify uninsured motorist coverage, except as above shown. The agent stated that since uninsured motorist coverage had been rejected that this was not considered in the substitution of the automobiles.

Plaintiff has cited one case in this State discussing the words "full coverage." This is Merchants' & Manufacturers' Inter-Insurance Alliance v. Hansen, 258 S.W. 257 (Tex.Civ.App.—Dallas 1924, writ dism'd). It should be noted that in that case, the Court held that it was understood by the parties to mean that a "full coverage" policy would include the coverage that was omitted. In addition, the insurer's agent in that case acknowledged in a letter that it was a regrettable error on the part of both of them that they did not examine the coverage in the policy.

In the case considered here, after Oldaker signed the rejection, there was no other conversation concerning uninsured motorist coverage. Art. 5.06–1, Vernon's Ann.T.C.S. Insurance Code provision concerning uninsured motorist coverage provides, in part, as follows:

" * * * The coverage required under this Article shall not be applicable where any insured named in the policy shall reject the coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

■ Even if we were to assume that Oldaker intended such coverage was included in the term "full coverage," yet mutual mistake envisions a mistake by both parties, and the Courts of this State have consistently denied reformation of an insurance contract where the mistake is unilateral. To reform for mutual mistake is reformation of a contract to reflect the intentions of the contracting parties. Stegall v. Fulwiler, 423 S.W.2d 182 (Tex.Civ.App.—Amarillo 1967, n. w. h.); Harrison v. Travelers Insurance Company, 442 S.W.2d 400 (Tex.Civ.App.—Dallas 1969, n. w. h.); Zurich Insurance Company v. Bass, 443 S.W.2d 371 (Tex.Civ.App.—Dallas 1969, n. w. h.); Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447 (Comm'n App. 1935), opinion adopted. This is the generally accepted rule governing insurance contracts. 13 Appleman Ins. L. & P., Secs. 7607–7609, pp. 362–371.

■ Defendant's agent testified that there were over two hundred different endorsements that could be affixed to a policy. In the absence of a showing of some agreement or understanding between the parties as to the additional provisions to be included in a policy of insurance, it would be a presumptive undertaking by the Court to attempt to define coverage intended by parties to an insurance agreement by the expression, "full coverage." We hold that the Plaintiff is not entitled to reformation of the contract by reason of mutual mistake.

■ A unilateral mistake induced by fraud may justify reformation of a contract. Reformation requires that the facts and circumstances warranting reformation be established by clear and convincing evidence. 32 Tex.Jur.2d, Sec. 84, pp. 164–165. This is likewise true of fraud since it is never presumed, and when fraud is alleged, it must be clearly shown. Frankfurt v. Wilson, 353 S.W.2d 490 (Tex.Civ.App.—Dallas 1962, n. w. h.).

■ Plaintiff by his own testimony was aware of his rejection of uninsured motorist coverage. His only complaint was that

 

when the newer car was substituted, he thought Defendant's agent should have again brought this to his attention. Since the policy as originally issued did not contain uninsured motorist coverage and it was never mentioned again, we can only conclude that there is no evidence of fraud presented in the record that would justify reformation and hold that the Plaintiff has not met her burden of proof.

Plaintiff's points of error are overruled and the judgment of the trial Court is affirmed.