**TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**Cecil and Ida TATUM, et al., Appellees.**

**No. 12–90–00177–CV.**

Court of Appeals of Texas,
Tyler.

Oct. 30, 1992.

Rehearing Denied Nov. 30, 1992.

Van A. Wigginton, Bob Black, Beaumont, for appellant.

Brent Farney, Gary Butler, Lufkin, for appellees.

Before CHADICK, C.J., and SMITH and BISSETT, JJ.

JACKSON B. SMITH, Jr., Justice (Retired).[1]

This is a one-car accident case wherein the Appellant, the owner/insured's insurance carrier, denied coverage for claims made by passengers for benefits provided in the underinsured provisions of the insured's policy. In a nonjury trial, the trial court determined that Appellant had improperly denied coverage, awarded damages, assessed statutory penalties, and awarded attorney's fees.

Appellant does not contest the amount of actual damages found by the court, however, it asserts that, (1) its policy specifically excludes the insured's vehicle from underinsured coverage, (2) stacking or pyramiding the uninsured provisions of the insured's policy is not permissible, and (3) the award of statutory penalties and award of attorney's fees is inapplicable to benefits awarded under the underinsured provisions of the policy.

The facts concerning the accident are undisputed. On February 3, 1989, a car owned by Cecil and Ida Tatum[2] was in a one-car accident. The car was driven by Bradley Steven Moody with the permission of Melanie Tatum, the Tatum's daughter. Melanie, Robert Powell and Cherie Stanley were passengers in the car. As a result of the accident, Melanie was killed and Robert and Cherie were injured. It is uncontested that the negligence of Bradley Moody was one of the proximate causes of the accident and damages sustained by the passengers in the Tatum's car.

On the date of the accident, Bradley was an insured on a policy issued by the Allstate Insurance Companies which provided aggregate liability coverage of $40,000 per accident. The Tatums' policy in which Melanie was a named driver, provided aggregate liability coverage of $50,000 per accident, and uninsured/underinsured cover-

---

1. The panel before whom this cause was submitted consisted of T.C. Chadick, retired chief justice, Court of Appeals, Sixth District of Texas at Texarkana. Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi. Honorable Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2. The Tatums name is spelled "Tatom" in part of the record. Because the style of the case spells their name "Tatum" we use that spelling throughout this opinion.

age of $20,000 per person and $40,000 aggregate per accident. Both carriers tendered into the registry of the court their maximum liability coverage; that is Allstate $40,000 and Appellant $50,000.

The trial court found that Cecil and Ida Tatum suffered, as a result of Melanie's death, $350,000 actual damages, Robert Powell suffered $350,000 actual damages, and Cherie Stanley suffered $77,000 actual damages. It gave Appellees judgment against Bradley Steven Moody for these amounts. The court then prorated the $90,000 paid into the registry of the court, ordering $40,500 be paid to the Tatums, $40,500 paid to Robert Powell and $9,000 paid to Cherie Stanley.[3] It then ordered that these amounts be credited to the awards adjudged against Bradley Moody. There is no appeal being made from this portion of the trial court's order.

After the court had determined that all of the Appellees were underinsured within the provisions of the Appellant's policy, it awarded Robert Powell $26,154 and Cherie Stanley $5,812. Because the Tatums had four cars listed and insured on their policy, the trial court stacked or pyramided the underinsured coverage afforded on the four cars, and awarded Cecil and Ida Tatum $86,154.

Before the court's final judgment was signed, Appellant notified the court that it had tendered $40,000 additional funds into the registry of the court, which was the aggregate amount of underinsured coverage on the vehicle involved in the accident and insured under its policy. It denied that the policy afforded underinsured coverage on the Tatum's vehicle which was involved in the accident and requested the court to so hold as a matter of law. However, the court in its final order found that coverage was afforded and ordered the $40,000, underinsured funds be prorated as follows; $18,000 to the Tatums, $18,000 to Robert Powell and $4,000 to Cherie Stanley.

■ Appellant initially asserts that Appellees are not entitled to benefits of the underinsured provision of its policy, because the Tatum vehicle was specifically excluded from the definition of an underinsured vehicle in Appellant's policy. It points out that the Texas Legislature delegated to the State Board of Insurance the authority to define certain terms, specifically "uninsured/underinsured vehicles" in TEX.INS.CODE ANN. art. 5.06–1 (Vernon 1981). It further states correctly that pursuant to such authority, the insurance board did define "uninsured/underinsured vehicles" and under such definition, the Tatum's vehicle was excluded from underinsured coverage.

Appellees concede that the Tatum's vehicle is excluded from coverage by the definition of "uninsured/underinsured" in the Tatums' policy but contend that the insurance board's definition of "uninsured/underinsured vehicle," and its exclusion of the Tatum's vehicle from such coverage frustrates the intention of the legislature in enacting Article 5.06–1 and defeats the purposes of the "uninsured/underinsured" legislation. Thus, Appellees assert that the board's definition of "uninsured/underinsured vehicles" is invalid insofar as it applies to the facts of this case.

TEX.INS.CODE ANN. art. 5.06–1(1) requires that automobile liability insurance include underinsured insurance coverage unless the insured rejects such coverage in writing.

Article 5.06–1(2)(b) states:

The term "underinsured motor vehicle" means that insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

Article 5.06–1(2)(c) states:

---

**3.** The Tatums had no legitimate claim to participate in their own liability policy proceeds paid into the court. It is unclear on what basis the trial court awarded them part of those proceeds. No point of error has been raised on the validity of the court's proration.

The State Board of Insurance is hereby authorized to promulgate the forms of the insured and underinsured motorist's coverages. The Board may also, in such forms, define "uninsured motor vehicle" to exclude certain motor vehicles whose operators are in fact uninsured.

In the insuring agreement portion of the policy, the State Board of Insurance has defined an uninsured vehicle as "an uninsured motor vehicle is defined as a land motor vehicle or trailer of any type....

4. which is an underinsured vehicle. An underinsured vehicle is one to which a liability bond or policy applies but its limit of liability:

a. is less than the limit for this coverage;

b. has been reduced by payment of claims to an amount less than the limits of liability under this coverage.

However, uninsured vehicle does not include any vehicle or equipment

1. *owned by or furnished or available for the regular use by any family member.*" (emphasis added)

We agree with the parties that the exclusionary language used in the Tatums' policy excludes their vehicle from the undersigned provisions of their automobile policy. Therefore, the question before us is whether such exclusionary language, when applied to the facts of this case, is inconsistent with and does not comport with the intent of the legislature when it enacted Article 5.06–1.

Appellees rely primarily on two cases to support their position that the exclusionary language in the Tatums' policy is inconsistent with Article 5.06–1; *Stracener v. United Services Automobile Association,* 777 S.W.2d 378 (Tex.1989), and *Briones v. State Farm Mutual Automobile Insurance Company,* 790 S.W.2d 70 (Tex.App.—San Antonio 1990, writ denied).

*Stracener* involved a two-car accident in which Stracener, a passenger, was killed when the car in which she was riding was struck from the rear. The question in *Stracener* was whether the amount of multi-policy insurance coverage available or whether the amount of the injured parties' actual damages determined if the injured party qualified to recover underinsured benefits. Neither the facts nor the issues involved in *Stracener* are similar to those in the present case.

In *Briones,* Briones was injured in a one-vehicle accident. He was a passenger in the vehicle that was owned by his uninsured employer and driven by an uninsured co-worker. Briones filed claim under the uninsured provisions of his personal automobile policy. His policy contained the same exclusion as the policy in question here; that is, it contained an exclusion for vehicles owned by or available for the regular use of the insured. Although Briones had the regular use of the truck involved and his policy had an exclusion for this use, the court held that the exclusion was invalid based on the *Stracener* decision that those clauses in an insurance policy which are not consistent with and do not further the purpose of Article 5.07–1 are invalid.

The facts in *Briones* are distinguishable from the facts in this case. In the instant case both the operator and the owner of the car were insured. In addition, both insurers have tendered into court their maximum policy liability coverage. None of these facts were present in *Briones.*

Appellant contends that we should follow the decision made in *Scarborough v. Employers Casualty Company,* 820 S.W.2d 32 (Tex.App.—Fort Worth 1991, no writ).

In *Scarborough,* Barbara Scarborough was a passenger in a car driven by her husband. Her husband lost control of the car which jumped a median and collided with the on-coming traffic. Barbara and her husband were both insured under the terms of the car policy. Barbara was injured and sued her husband for damages and also sued their insurer for uninsured/underinsured benefits. The trial court granted summary judgment for the insurer, and the Fort Worth Court of Appeals affirmed.

In affirming the trial court's judgment, the Fort Worth court relied on the following statement by the Supreme Court in *Stracener:*

By purchasing this coverage along with basic liability, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that persons own family and guests from the negligence of *others*. (Emphasis added.)

*Stracener* at 384.

The Fort Worth court reasoned that the word "others" meant negligence of strangers to the policyholders, not Appellant's husband. It then held *Stracener* to be distinguishable and upheld the validity of the exclusionary clause.

The facts in *Scarborough* and the present case are similar in several respects. In each case, claim was being made by an insured for uninsured benefits where the vehicle at the time of the accident was being operated by the insured or by another person with the permission of the insured. In each instance, the operator of the insured vehicle was the tortfeasor. Finally, in each case the operator of the vehicle was not a stranger to the insured.

There are certain rules applying to uninsured/underinsured coverage that have been established by our Supreme Court. "[A] negligent party is underinsured whenever the available proceeds of his liability insurance are insufficient to compensate for the injured party's actual damages." *Stracener*, 777 S.W.2d at 380. "Article 5.06-1 is to be construed liberally to give full effect to the public policy which led to its enactment." *Id.* at 382. "Those clauses in insurance policies which are not consistent with and do not further the purpose of Article 5.06-1 are invalid." *Id.* at 384. In addition to the above rules, it appears to be well established that the construction of insurance policies are generally governed by rules applicable to contracts. *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 917–18 (Tex.App.—Fort Worth 1988, writ denied). Unless there is an ambiguity in the language of the contract, words are given their plain meaning. *Id.* at 918.

Applying the above rules to the present case, we note that the Tatums and the other Appellees do not contend that there is any ambiguity in the exclusionary language which states "uninsured motor vehicle does not include ... [any vehicle] owned by or furnished or available for the regular use of you or any family member." They contend that such language, when liberally applied to the facts of this case, defeats the purpose and intent of Article 5.06–1 and is invalid. We disagree.

This was a one-car accident where the car was regularly used by the family. At the time of the accident, the car was in the custody of an insured family member who was a passenger in the car and who had given permission to a friend to drive the car. These facts appear to fit those set forth in the exclusionary language in the Tatums' policy. We agree with the decisions in *Stracener* and *Briones*, but the facts in this case, as heretofore noted, are distinguishable and the decisions in those cases are not applicable.

We hold that the exclusionary language in the Tatums' policy, when applied to the facts of this case, does not frustrate the intent and purpose of the legislature in enacting TEX.INS.CODE ANN. art. 5.06–1.

Appellant's point of error one is sustained.

■ Appellant next contends that the trial court erred in stacking or pyramiding the Tatums underinsured coverage in its award to the Tatums.

As heretofore noted, the Tatums' vehicle which was involved in the accident had policy coverage for uninsured/underinsured bodily injury of $20,000.00 per person and $40,000.00 aggregate per accident. In the same policy, identical coverage was afforded on three other named vehicles owned by the Tatums. Premiums for these vehicles had also been paid for identical uninsured/underinsured coverage.

The trial court's award of $86,514.00 to the Tatums was arrived at by stacking the per person $20,000.00 coverage for all four cars. Interest and penalties account for the $6,514.00.

Appellees contend that the *Stracener* opinion, in effect, overrules prior court holdings that stacking is not permissible where there is single policy coverage and

that *Stracener* now authorizes such stacking.

We cannot agree with the Appellees interpretation of the language in *Stracener.* In fact, *Stracener* makes it abundantly clear that in those cases where stacking was permitted, two or more policies were involved. The Supreme Court has heretofore refused to approve the same argument which the Tatums are asking this Court to approve. *Westchester Fire Insurance Company v. Tucker,* 512 S.W.2d 679 (Tex. 1974). In *Tucker,* a single multicar policy afforded uninsured owner's coverage on each named vehicle in the policy. The Supreme Court, in rejecting Tucker's contention that he was entitled to stack his uninsured motorist coverage because he had paid for that coverage on all vehicles named in the policy stated:

> Uninsured motorist coverage on only one automobile entitles the named insured ... to basic protection in the stated limits while occupying the insured vehicle....
>
> Here ... we find nothing to indicate that the additional premium charge or charges were paid or received for that purpose [stacking] and all the policy provisions point to the contrary conclusion. Here, ... we hold that the stated limits of the uninsured motorist coverage are not subject to stacking or pyramiding under these facts ...

*Id.* at 684.

We are of the opinion that the *Tucker* decision is still valid and binding upon this Court. Under such circumstances, we hold that stacking or pyramiding of uninsured/underinsured motor vehicle coverage is not permissible where there is single multicar coverage.

Appellant's second point of error is sustained.

In its final point of error, Appellant contends that the trial court erred in awarding 12% statutory penalty and ⅓ attorneys fees pursuant to *Tex.Ins.Code Ann.* art. 3.62 because such an award is inapplicable to insurance benefits authorized by *Tex.Ins. Code Ann.* art. 5.06–1.

Appellant contends that Article 3.62 is applicable to life, health, and accident policies only and is not applicable to automobile policies. As authority for its position it cites, *Reliance Insurance Company v. Falknor,* 492 S.W.2d 721 (Tex.Civ.App.— Houston [1st Dist.] 1973, writ ref'd n.r.e.).

▮ In *Falknor* the court held that uninsured motorist coverage as mandated by Article 5.06–1 is not accident insurance as contemplated in Article 3.62. *Id.* at 723. It pointed out that an uninsured policy does not provide that the insurer will unconditionally pay for injuries received as a result of acts of an uninsured motorist. *Id.*

▮ Appellees contend that the holding in *Falknor* is no longer a viable or legal binding concept because it was written prior to the enactment of comparable negligence legislation. They also assert that later case law which has been approved by the Supreme Court holds that it is not the type of carrier that controls the applicability of Article 3.62 but rather the distinctive type of loss. They cite for authority of this proposition *Cantu v. Western Fire and Casualty Company, Ltd.,* 716 S.W.2d 737, 741 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e. 723 S.W.2d 668); and *Great Global Assurance Company v. McFarlin,* 728 S.W.2d 401, 403 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.).

In *Cantu,* the insured was seeking to collect damages for a truck destroyed by a fire as well as penalty and attorney fees provided in Article 3.62. In *McFarlin,* the insured was seeking to collect damages from his insurer for the death of a horse as well as statutory penalty and attorney fees.

In *Cantu* and *McFarlin,* both courts declined to award statutory penalties and attorney fees as authorized under Article 3.62. Both courts reasoned that it was not the type of carrier that controlled the applicability of Article 3.62 but rather the distinctive type of loss. In each of these cases, the court found that the injury (a truck and a horse) was not an injury to the person as contemplated in Article 3.62 and therefore statutory penalties and attorneys fees as provided in that Article were not applicable.

We agree with the holdings in *Falknor, Cantu* and *McFarlin*, however we do not agree that the type of loss is the sole criterion that controls the applicability of Article 3.62. We believe that the intent of the legislature in enacting legislation is one of the paramount criteria in determining the applicability of that legislation. To give an extreme example of type of loss being the sole criteria, it would seem inane to say that provisions in air craft legislation was applicable to water fowl legislation simply because the air craft and the water fowl both sustained injuries while in flight. We are of the opinion that the statutory penalties provided for in Article 3.62 are applicable to life, health, and accident policies not automobile policies.

We note that the *Falknor* decision was made in 1973 and at least nine legislative sessions have occurred since that time. The legislature is not unaware of court decisions and yet in the 19 years that have passed since the *Falknor* decision, the legislature has not enacted legislation which would incorporate the statutory penalty and attorneys fees provided for in Article 3.62 into the uninsured/underinsured automobile coverage.

None of the cases cited to us by any of the parties in this case are comparable to the factual situation we have here. In this case, although the insurer has paid the maximum limits of its liability coverage, the claimants are asserting that because the insured was underinsured they are also entitled to the maximum limits under the insured's underinsurance coverage. In addition, they claim that because the Appellant did not pay the underinsured benefits that they are entitled to statutory penalty and attorneys fees. The Appellees have cited us to no cases that support this argument and we are not aware of any cases that so hold.

Finally, we have held that the Tatums were not underinsured motorists as defined in Article 5.06–1 and therefore the claims by the Appellees for statutory penalty and attorneys fees cannot be awarded.

For all of the reasons set forth above the Appellant's third point of error is sustained.

The judgment of the trial court awarding damages for underinsured coverage and awarding statutory penalties and attorneys fees is reversed, and judgment is rendered that Appellees take nothing on their claims under the underinsured provisions of the Tatum's policy and on their claim for statutory penalties and attorneys fees; in all other respects the judgment of the trial court is affirmed.

All costs of appeal are charged to the Appellees.