Michael T. **HOWARD**, Appellant,

v.

**INA COUNTY MUTUAL INSURANCE COMPANY**, Appellee.

No. 05–95–00489–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 1996.

lien against any amount thereafter paid as compensation. *Id.*

Bruce A. Flint, Steve J. Kun, Law Offices of Bruce A. Flint, P.C., Dallas, for Appellant.

George L. Lankford, Fanning Harper & Martinson, Dallas, for Appellee.

Before OVARD, JAMES and HANKINSON, JJ.

## OPINION

HANKINSON, Justice.

This case involves the written rejection exception to article 5.06–1 of the Texas Insurance Code, the statutory provision governing uninsured and underinsured motorists coverage. Michael T. Howard appeals the trial court's grant of summary judgment in favor of INA County Mutual Insurance Company ("INA") and the denial of his own summary judgment motion. Howard contends generally that the trial court erred by reforming the insurance policy to reject coverage retroactively under an expired policy and by considering the intent of the parties to the insurance policy in determining coverage. We hold that the parties' intent may not be considered in determining whether the insured validly rejected uninsured/underinsured motorists coverage under article 5.06–1(1) of the Texas Insurance Code, and therefore, uninsured/underinsured motorists coverage cannot be rejected retroactively. As a result, we conclude that uninsured/underinsured motorists coverage existed at the time of Howard's accident. We reverse the trial court's judgment and remand to the trial court for further proceedings.

## BACKGROUND

The facts are undisputed for the purposes of this appeal. Howard suffered personal injuries as the result of an automobile accident with an underinsured motorist on February 4, 1993. At the time of the accident, Howard was driving a company vehicle, acting within the scope of his employment with Palestine Contractors, Inc. ("Palestine"). INA insured Palestine for liability coverage on its vehicles under a commercial automobile policy issued for the period August 15, 1992 to August 15, 1993. The policy insured 202 vehicles for seventeen named insureds with an estimated one-year premium of $91,522.

INA did not charge Palestine a premium for uninsured/underinsured motorists ("UM/UIM") coverage during the policy period. The policy included a Texas UM/UIM coverage selection form (the "original coverage selection form"). Palestine's vice-president, Phil Jenkins, signed the form but failed to date it or to select any of the three coverage options available. That form appears within the copy of the entire policy attached to INA's motion for summary judgment:

| _Palestine Contractors, Inc._ | _United Employers, Ins. Agency_ | _H 05824369_ |
|---|---|---|
| Named Insured or Applicant | Agent's Name | Policy Number |

In accordance with the provisions of Article 5.06–1, Texas Insurance Code, as amended, I acknowledge that I have been given the opportunity to purchase Uninsured/Underinsured Motorists Coverage in amounts up to the automobile liability coverage limits I have on the policy shown (or the policy for which I have applied), and I have also been given the right to reject the Uninsured/Underinsured Motorists Coverage and have made the following choice(s):

1. ☐ I hereby reject Uninsured/Underinsured Motorists Coverage in its entirety.
2. ☐ I hereby reject the property damage feature of Uninsured/Underinsured Motorists Coverage only.
3. ☐ I hereby accept Uninsured/Underinsured Motorists Coverage in its entirety, realizing that coverage will apply only for motor vehicles which meet the definition of "owned automobiles" as provided in this policy.

The rejection(s) indicated above shall apply on the policy shown (or applied for) and on all future renewals of such policy and all future policies issued to me by this Company because of change of vehicle or coverage, or because of an interruption of coverage, until I notify the company in writing that thereafter Uninsured/Underinsured Motorists Coverage is desired.

/s/ Phil Jenkins
Signature of Named Insured or Applicant

_____
Date

In connection with the February 4, 1993 accident, Howard filed a claim for UIM bene-fits under Palestine's policy. Because Jenkins signed the original coverage selection

form, INA treated it as a rejection of all UM/UIM coverage and denied Howard's claim. Howard filed suit against INA on June 27, 1994, alleging a cause of action for breach of the duty of good faith and fair dealing by denying his claim in the absence of a written rejection of UM/UIM coverage.

On September 26, 1994, Jenkins executed a new UM/UIM coverage rejection form (the "1994 coverage rejection form"), indicating Palestine's rejection of UM/UIM coverage in its entirety for the policy period "8/15/92—8/15/93." That form provided in part:

> In accordance with the provisions of Article 5.06–1, Texas Insurance Code, as amended, I have been given the opportunity to purchase Uninsured/Underinsured Motorists Coverage in amounts up to the automobile liability coverage limits I have on *my policy,* and I have also been given the right to reject Uninsured/Underinsured Motorists Coverage and have made the following choice(s):
>
> 1. (xx) I hereby reject Uninsured/Underinsured Motorists Coverage in its entirety; or
>
> . . . .
>
> The rejection(s) indicated above *shall apply on my policy and on all future renewals of such policy and all future policies issued to me* by this Company because of change of vehicle or coverage, or because of an interruption of coverage, until I notify the Company in writing that thereafter Uninsured/Underinsured Motorists Coverage is desired.

(Emphasis added.)

On November 2, 1994, Howard and INA each filed motions for summary judgment. Howard moved for summary judgment on his bad faith claim, asserting as grounds that Palestine failed to meet the statutory requirements of the Texas Insurance Code for rejecting UM/UIM coverage because it failed to select either box rejecting coverage on the original coverage selection form. INA moved for summary judgment on two grounds: (1) Palestine and INA voluntarily reformed the policy retroactively to reflect their intent and agreement to reject the UM/UIM coverage at the time INA originally issued the policy; and (2) INA was not liable

for breach of the duty of good faith and fair dealing because no UM/UIM coverage existed under the policy. The trial court granted INA's motion and ordered that Howard take nothing by his claim.

## STANDARD OF REVIEW

This Court reviews a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *See Capitan Enters., Inc. v. Jackson,* 903 S.W.2d 772, 775 (Tex.App.—El Paso 1994, writ denied). An appellate court follows well-established procedures when reviewing a summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). A plaintiff, as movant, must conclusively prove all essential elements of his claim. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990).

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law, and neither party can prevail because of the other's failure to discharge his burden. *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993); *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 549–50 (Tex.App.—Dallas 1990, writ denied). If the trial court grants one motion and denies the other, we may render the judgment the trial court should have

rendered. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). But if a movant does not show its entitlement to summary judgment as a matter of law, we must remand the case to the trial court. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 829 (Tex.1970). When both parties move for summary judgment, we consider all the evidence accompanying both motions in determining whether to grant either party's motion. *Dallas County Appraisal Dist. v. Institute for Aerobics Research,* 766 S.W.2d 318, 319 (Tex.App.— Dallas 1989, writ denied).

## DISCUSSION

In his first point of error, Howard challenges the trial court's judgment by contending that Palestine failed to reject UM/UIM coverage in writing as a matter of law. Without the written rejection, Howard argues UM/UIM coverage existed as a matter of law. In related points of error four through six, Howard argues that: (1) the trial court could not reform the policy retroactively because the legislature created an express exception to the general rule allowing retroactive reformation of a contract; (2) retroactive reformation frustrates the statute's operation by creating a class of insureds unable to obtain the coverage the legislature intended to provide; (3) the parties' intent should not be considered in determining whether coverage existed; and (4) because the insurance policy had expired, retroactive reformation is improper.

INA argues that the policy can be reformed to reflect INA and Palestine's agreement at the time the policy issued to reject UM/UIM coverage because: (1) the Texas Insurance Code does not specify the timing of the rejection; (2) Howard was never an insured under the policy; (3) INA and Palestine intended to reject the coverage; (4) Howard was not an intended beneficiary of UM/UIM coverage; and (5) considering intent is appropriate in reforming the policy. INA also contends that Howard failed to raise a point of error complaining about the denial of his summary judgment.

### INA's Summary Judgment

INA argues that the 1994 coverage rejection form reformed the policy to reflect INA and Palestine's agreement to reject the UM/UIM coverage. Because the policy, as reformed, rejects UM/UIM coverage in its entirety, INA further argues that it cannot be liable for denying Howard's claim when no UM/UIM coverage existed.

■■■ To prevail on its summary judgment motion, INA must have negated an element of Howard's cause of action for breach of the duty of good faith and fair dealing. An insurer owes a duty to deal fairly and in good faith with its insured in the processing and payment of claims. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex. 1995). A breach of the duty of good faith and fair dealing is established when: (1) no reasonable basis existed for denying or delaying payment of benefits under the policy; and (2) the insurer knew or should have known that no reasonable basis existed for denying or delaying payment of the claim. *Id.* The first element requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claim. *Id.* This requirement assures that the insurer will not be liable for an erroneous denial of a claim as long as a reasonable basis existed for that denial. *Id.*

■■■ An insured's claim seeking benefits under the policy is independent of an insured's claim alleging bad faith against the insurer. *Id.* at 340–41 (citing *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex. 1994)). Generally, no claim for bad faith lies when an insurer promptly denies a claim that is not covered under the policy. *Stoker,* 903 S.W.2d at 341. In denying a claim, however, an insurer may commit some extreme act that causes injury independent of the policy claim and rises to the level of bad faith. *Id.* Because Howard does not plead facts alleging injury caused by some extreme act INA committed in denying his claim, we focus on whether, under the general rule, INA negated an element of Howard's cause of action or conclusively proved that no valid cause of action existed. This case presents two issues: (1) whether Palestine's and INA's intent may be considered to reform the policy to reject UM/UIM coverage; and (2) wheth-

er INA may reform the policy to reject the UM/UIM coverage retroactively.

Article 5.06–1 of the Texas Insurance Code provides in part:

> No automobile liability insurance ... covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in at least the limits described in the Texas Motor Vehicle Safety–Responsibility Act, under provisions of the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury ... resulting therefrom. *The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing;* provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliate insurer.

Tex. Ins.Code Ann. art. 5.06–1(1) (Vernon 1981) (emphasis added). This Court has recognized the legislature's purpose of protecting conscientious, insured motorists from financial loss caused by negligent, financially irresponsible owners and operators of uninsured or underinsured motor vehicles. *See Farmers Tex. County Mut. Ins. Co. v. Griffin,* 868 S.W.2d 861, 864 (Tex.App.—Dallas 1993, writ denied); *Traylor v. Cascade Ins. Co.,* 836 S.W.2d 292, 294 (Tex.App.—Dallas 1992, no writ). By enacting article 5.06–1, the legislature declared that the public policy of this State requires UM/UIM coverage be made a part of every automobile liability insurance policy issued, subject to only limited exception. *Employers Casualty Co. v. Sloan,* 565 S.W.2d 580, 583 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.). The statute's limited exception provides for rejection of UM/UIM coverage; however, the insured must reject the coverage in writing. Tex. Ins.Code Ann. art. 5.06–1(1); *Texas Farm*

*Bureau Mut. Ins. Co. v. Tatum,* 841 S.W.2d 89, 91 (Tex.App.—Tyler 1992, writ denied); *Sloan,* 565 S.W.2d at 583. Although a written rejection is mandatory, the statute does not require a special procedure or special language for the writing, and execution of a satisfactory written rejection requires only minimal effort by the insured. *See Sloan,* 565 S.W.2d at 585.

Courts must liberally construe article 5.06–1 to give full effect to the public policy broadly requiring UM/UIM coverage. *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 382 (Tex.1989); *Sloan,* 565 S.W.2d at 583. Because of its remedial purpose, and as a corollary to the courts' liberal interpretation effecting UM/UIM coverage, the written rejection exception to article 5.06–1's general rule should be strictly construed to protect the insured. *Sloan,* 565 S.W.2d at 583; *Guarantee Ins. Co. v. Boggs,* 527 S.W.2d 265, 268 (Tex.Civ.App.—Amarillo 1975, writ dism'd). Thus, absent a written rejection, every automobile liability policy of insurance delivered in this State includes UM/UIM coverage by operation of law. *See* Tex. Ins.Code Ann. art. 5.06–1(1); *Boggs,* 527 S.W.2d at 269 (when rejection of UM coverage is ineffective, policy includes UM coverage by operation of law).

Initially, we note that INA does not argue that its original coverage selection form met the written rejection requirement of article 5.06–1(1). Howard argues that no written rejection of UM/UIM coverage existed as a matter of law. INA's summary judgment evidence includes: (1) a copy of the policy containing the original coverage selection form and the 1994 coverage rejection form; and (2) the affidavits of Jenkins and Raymond C. Hall. This evidence shows that Jenkins signed the original coverage selection form offering three options for coverage under the policy. The form provided a method to: (1) reject UM/UIM coverage in its entirety; (2) reject the property damage feature of UM/UIM coverage; or (3) accept the UM/UIM coverage in its entirety. Jenkins failed, however, to date the form or to select any coverage option. Through Hall's affidavit testimony, INA conceded that the original rejection form failed to meet article 5.06–

1(1)'s statutory requirement of a written rejection. Hall testified that the September 26, 1994 "correction" was "necessary" because Palestine failed to select a rejection option.

■ We strictly construe the policy language that purports to reject coverage. *See Sloan*, 565 S.W.2d at 584; *Boggs*, 527 S.W.2d at 269. Jenkins signed the original coverage selection form and with minimal effort could easily have checked one of the two boxes located above the signature line to indicate Palestine's rejection of the coverage. *See Sloan*, 565 S.W.2d at 585. Because Jenkins did not select a rejection option, the original coverage selection form bearing only a signature failed to meet the written rejection requirement of article 5.06–1(1). *See id.*

INA argues, however, that because article 5.06–1(1) does not require the rejection to be in writing before the accident, the parties were entitled to reform the policy to reflect their intent to reject the coverage at the time the policy issued. INA argues that the real issue in this case is whether the contracting parties originally intended to reject the coverage before the accident but had not done so because of a mutual mistake. INA contends the evidence showing mutual mistake includes: (1) the absence of a premium charge for UM/UIM coverage; and (2) Jenkins's and Hall's affidavit testimony that the parties intended to reject the coverage. Finally, INA contends that without reformation, an insured could never make changes to the policy once the policy issued. We disagree with all of these contentions.

■ Courts may equitably reform a contract if the parties prove a definitive and explicit agreement, understood in the same sense by both, but by their mutual mistake, the written contract fails to express the agreement. *Huttleston v. Beacon Nat'l Ins. Co.*, 822 S.W.2d 741, 746 (Tex.App.—Fort Worth 1992, writ denied) (citing *Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 377 (Tex.1965)). While an insurance policy may be reformed because of mutual mistake, reformation necessarily contemplates alteration or amendment of the policy language to reflect the true intent of the parties at the time of its inception. *See Huttleston*, 822

S.W.2d at 746; *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 527 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (citing *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex.1987) (underlying objective of reformation is to correct mutual mistake made in preparing written instrument)).

■ INA's summary judgment evidence included the affidavits of Jenkins and Hall. Jenkins testified that at the time he signed the original rejection form on behalf of Palestine, "it was the intention" of Palestine to reject UM/UIM coverage. Hall testified that INA issued the September 26, 1994 rejection form to "correct the original" form to "accurately reflect that such coverage was and is rejected for the policy period August 15, 1992 to August 15, 1993." INA also argued that it charged and Palestine paid no premium for UM/UIM coverage, evidenced by the copy of the policy attached to its motion.

■ Statutes bearing on the subject matter of insurance contracts or defining the rights and liabilities of parties to insurance contracts become a part of the contract. *See Carroll v. Universal Underwriters Ins. Co.*, 613 S.W.2d 815, 817 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Because every policy of insurance in this State, absent a written rejection, includes UM/UIM coverage by operation of law, that result ensues without regard to the intent of the parties to the insurance contract. *See Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 308 (Tex.1978); *Carroll*, 613 S.W.2d at 817; *Boggs*, 527 S.W.2d at 269. We recognize that our legislature emphasized the import of protecting insured motorists suffering financial loss caused by the negligence of owners and operators of uninsured or underinsured motor vehicles; therefore, we strictly construe policy language that purports to reject coverage to achieve that purpose. Consequently, we should not apply the rules used in determining contracting parties' intent and acts when considering whether an insured rejected UM/UIM coverage. *See Unigard*, 572 S.W.2d at 308 (same public policy aspects exist for article 5.06–1 as exist for article 5.06–3 of the Texas Insurance Code). We

hold, therefore, that the parties' intent may not be considered in determining whether, under article 5.06–1(1), a valid rejection of UM/UIM coverage exists.[1] Because we do not consider the intent of the parties in determining rejection of UM/UIM coverage, it follows, and we also hold, that the parties may not reform the policy to reject retroactively the UM/UIM coverage mandated by article 5.06–1(1).

To the extent INA argues that the 1994 coverage rejection form was adequate to reform the *August 15, 1992 to August 15, 1993* policy, we note the plain language of that form rejects coverage on "my policy and on all future renewals of such policy and all future policies." On September 26, 1994, "my policy" referred to the only policy in effect at that time: the renewal of the August 15, 1992 to August 15, 1993 policy. Because of its specific language, the 1994 coverage rejection form applied only to the renewal policy. *See Berry v. Texas Farm Bureau Mut. Ins. Co.*, 782 S.W.2d 246, 248 (Tex.App.—Waco 1989, writ denied) (renewal policy creates new, separate, and distinct contract between insurer and insured).

We do not hold today that an insurance policy may never be reformed. Our holdings do not interfere with the ability of parties to contract freely, and we do not expand the law. Instead, coverage in this case rests upon the plain language of article 5.06–1 of the Texas Insurance Code. There, we find no language that indicates a written agreement to reject UM/UIM coverage, entered after a policy issues, could or should have retroactive effect—including the effect of extinguishing claims that may have arisen during the interim.

We limit our holdings only to those insurance contracts governed by article 5.06–1 of the Texas Insurance Code. Our decision harmonizes the public policy supporting the legislation with the specific facts of this case. Jenkins failed to reject the coverage at the time he signed the original coverage selection form. When Jenkins finally rejected UM/

UIM coverage on the 1994 coverage rejection form, that rejection became effective only on the date executed. Thus, Jenkins's testimony that Palestine intended to reject UM/UIM coverage at the time the policy issued and INA's contention that the absence of a premium charge or payment for the coverage evidenced the parties' intent to reject the coverage carry no weight and must not be considered in determining whether Palestine rejected coverage at the time the August 15, 1992 policy issued.

If we did not so hold and, instead, considered INA's and Palestine's intent and reformed the policy to reject coverage retroactively, we would be judicially rewriting the limited exception to UM/UIM coverage to include circumstances unique to each situation—such as the absence of a premium charged or paid for coverage in the absence of a clear written expression of rejection. That result would not only increase and burden litigation, but would also violate the public policy our legislature has already declared and our courts must recognize and support: absent a written rejection of coverage by the insured, every automobile liability coverage policy includes UM/UIM coverage by operation of law.

Because INA's policy insuring Palestine contained no written rejection of the mandated UM/UIM coverage, UM/UIM coverage existed at the time of the accident. The trial court erred in granting INA's summary judgment.

### Howard's Summary Judgment

We liberally construe Howard's first point of error to complain that the trial court erred in denying his summary judgment. Howard sued INA for a breach of the duty of good faith and fair dealing by its wrongful denial of his claim for UM/UIM benefits. Howard asserted in his motion for summary judgment that INA wrongfully denied the claim because it had no written rejection of the coverage as required under article 5.06–1 of

---

1. *But see Oldaker v. Travelers Ins. Co.*, 497 S.W.2d 402, 403–04 (Tex.Civ.App.—El Paso 1973, no writ) (where written rejection of UM coverage existed, absent other agreement between parties of additional provisions to be included in policy, "it would be presumptive" of court to define intended coverage).

the Texas Insurance Code. INA responded that Howard failed to present competent evidence supporting summary judgment. We agree with INA.

As an insurer, INA owed its insured a duty to deal fairly and in good faith in the processing and payment of claims. *See Stoker,* 903 S.W.2d at 341. To prevail on his summary judgment, Howard must have proved each element of his cause of action. Initially, Howard must have proved his classification as an insured under Palestine's policy. *See id.* Once proved, Howard must also have proved that: (1) no reasonable basis existed for INA's denying or delaying payment of benefits under the policy; and (2) INA knew or should have known that no reasonable basis existed for denying or delaying payment of his claim. *See id.*

Howard asserted as the sole ground for summary judgment that UM/UIM coverage existed because Palestine failed to select a rejection option when it signed the original coverage selection form. We have concluded that because Palestine failed to reject the UM/UIM coverage in writing, UM/UIM coverage existed under the policy. We have also concluded that INA could not reform the policy to reject UM/UIM coverage retroactively. Even with UM/UIM coverage established as a matter of law, however, Howard's motion for summary judgment failed to set forth grounds and present proof establishing as a matter of law each element of his cause of action.

Howard argued, in effect, that because the policy included UM/UIM coverage, no reasonable basis existed for INA to deny his claim. Howard failed to allege and present any evidence, much less conclusive evidence, that he was insured under the policy. Howard failed to allege and present conclusive evidence that a reasonable insurer under similar circumstances would not have denied his claim and that INA knew or should have known that no reasonable basis for denying his claim existed at the time INA denied it.

See *Stoker,* 903 S.W.2d at 341. A motion must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). Because Howard failed to allege grounds and present evidence establishing as a matter of law each of the elements of his cause of action, the trial court did not err in denying Howard's summary judgment. *See Guynes,* 861 S.W.2d at 862; *McConnell,* 858 S.W.2d at 341.

We sustain points of error four, five, six, and that portion of Howard's first point of error complaining the trial court erred in granting INA's summary judgment motion, but we overrule that portion of Howard's first point of error complaining the trial court erred in denying his summary judgment motion. Because of our disposition of these points, we need not consider Howard's second and third points of error.[2] *See* TEX. R.APP. P. 90(a).

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

OVARD, Justice, dissenting.

Because I believe the trial court properly reformed the insurance contract to reflect the actual agreement of the contracting parties, I respectfully dissent.

Insurance policies are contracts and, as such, are subject to rules applicable to contracts generally. *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex.1994). The essence of a contract involves the meeting of the minds between the two parties to the agreement. *E.g., Zurich Ins. Co. v. Bass,* 443 S.W.2d 371, 374 (Tex.Civ.App.—Dallas 1969, no writ); *Sonne v. Federal Deposit Ins. Corp.,* 881 S.W.2d 789, 791 (Tex.App.—Houston [14th Dist.] 1994, writ denied). When the parties have come to an agreement, the terms can be memorialized in a written contract.

2. Howard asserts in his second point of error that allowing INA and Palestine to reform the insurance policy to reject coverage retroactively would dramatically and unfairly affect his rights arising from the accident, the law, and the policy. In his third point of error, Howard asserts

that the trial court erred in admitting as evidence the reformed contract between INA and Palestine because the contract was neither relevant nor admissible evidence pursuant to rules 401 and 402 of the Texas Rules of Civil Evidence.

When both parties to the contract are mistaken as to what the terms of the written contract are or when there is a unilateral mistake induced by fraud, the courts can reform the written memorialization to reflect the actual terms of the contract. *See Automobile Ins. Co. v. United Elec. Serv. Co.*, 275 S.W.2d 833, 838 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.). The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex.1987). Reformation is not an alteration or amendment of the actual contract, but merely a change to the written memorialization to more truly reflect what the parties had agreed. In reforming an instrument the court does not change the terms of the contract made by the parties, it merely declares what those terms were.[1] *Automobile Ins. Co.*, 275 S.W.2d at 840. Thus, reformation necessarily relates back to the time that the original contract was first memorialized in writing.

For the remedy of reformation to be available on the ground of mutual mistake the parties must have reached a definite and explicit agreement, understood in the same sense by both, which agreement has been misstated in the written contract because of a mistake common to both contracting parties. *Zurich Ins. Co.*, 443 S.W.2d at 374. Reformation requires that the facts and circumstances warranting reformation be established by clear and convincing evidence. *Oldaker v. Travelers Ins. Co.*, 497 S.W.2d 402, 404 (Tex.Civ.App.—El Paso 1973, no writ).

As the majority acknowledges, courts in this state have repeatedly allowed insurance contracts to be reformed to reflect the true contract that existed between the parties. *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 377 (Tex.1965). Reformation of an insurance policy may be effected even after a loss has occurred if the agreement actually made by the parties has not

been correctly incorporated in the instrument through mutual mistake, and this is true even when there have been several renewals of the contract over a period of years. *Automobile Ins. Co.*, 275 S.W.2d at 838.

In fact, courts in this state have discussed reformation as an option when dealing with a rejection of coverage under article 5.06–1. In *Oldaker v. Travelers Insurance Co.*, the court discussed article 5.06–1 and whether there was a mutual mistake allowing the court the option to reform the contract. *Oldaker*, 497 S.W.2d at 404. The court concluded that the party seeking reformation had not established by clear and convincing evidence that mutual mistake or unilateral mistake induced by fraud existed. *Oldaker*, 497 S.W.2d at 404. That court inferred that had mutual mistake or mistake induced by fraud been proven, reformation was permissible. *Oldaker*, 497 S.W.2d at 404.

The majority opinion goes beyond any other case in this jurisdiction and expands the current law to severely restrict an individual's contractual freedoms. The majority points to the *Employers Casualty Co. v. Sloan, Unigard Security Insurance Co. v. Schaefer*, and *Guarantee Insurance Co. v. Boggs* decisions in support of its public policy expansion of the law. However, none of these cases is directly on point or expands the law as the majority opinion does.

The *Sloan* decision deals with an oral contract, where the coverage was denied orally, but the agreement was never memorialized in writing and the parties did not seek reformation. *Employers Casualty Co. v. Sloan*, 565 S.W.2d 580, 585 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.). The *Sloan* decision never discussed reformation and stands for the proposition that the rejection of uninsured/underinsured coverage must be in writing.

In *Unigard* the court addressed Personal Injury Protection under article 5.06–3 and a written "Exclusion of Named Driver" that

---

1. Even when the legislature mandates that a term of an agreement be in writing, reformation is not barred. For example, the statute of frauds is no bar to the reformation of a contract for the sale of land where the parties had an agreement and by their mutual mistake failed to state the agreement in the writing. *National Resort Communities, Inc. v. Cain*, 526 S.W.2d 510, 513 (Tex. 1975).

did not mention or refer to the article 5.06–3 coverage. *Unigard Security Ins. Co. v. Schaefer*, 572 S.W.2d 303, 306 (Tex.1978). The *Unigard* decision also did not address reformation and stands for the proposition that clear and express rejection of article 5.06–3 coverage is required.[2]

The *Boggs* decision simply analyzes the rejection of coverage language of article 5.06–1. Specifically, the court determines that the word "issued" in the statute must be strictly construed. *Guarantee Ins. Co. v. Boggs*, 527 S.W.2d 265, 268–69 (Tex.Civ. App.—Amarillo 1975, writ dism'd). None of these decisions raises the equitable remedy of reformation, nor do any of these opinions expand the language of article 5.06–1.

I agree with the majority's analysis of the policies behind article 5.06–1. However, in this case, there is no question that, with the reformation, the rejection of uninsured/underinsured coverage by Palestine falls within the plain language and policies of the statute. There is a clear showing of mutual mistake. Both parties to the contract agreed that the terms of the insurance contract included a rejection of uninsured/underinsured coverage. On these terms the parties had a "meeting of the minds" upon which the contract was created. Palestine did not pay a premium for the coverage. The written memorialization of the contract did not reflect this coverage as required by article 5.06–1. The parties sought to reform the contract to reflect their true agreement. The reformation was in writing, as required by article 5.06–1, and related back to when the original agreement was signed, therefore reflecting the true agreement or contract of the parties.

Although the majority limits its holding only to bar reformation under the rejection of uninsured/underinsured coverage under article 5.05–1, the bar will affect more than the limited circumstances involved in this case. Mutual mistake is not the only case when reformation may be utilized by the courts. Reformation may also be warranted in the case of fraud. *See Zurich Ins. Co.*, 443 S.W.2d at 375. By barring reformation, one of the parties could be prevented from

having coverage or not having coverage by the fraudulent act of the other party. When this happens, the courts should have the power to reform the written agreement.

Additionally, the freedom to contract is an important right that the courts should seek to uphold. The legislature has provided the insured with the automatic inclusion of uninsured/underinsured coverage when the parties fail to address the coverage during negotiations. However, uninsured/underinsured coverage is not mandatory in this state. *See Greene v. Great Am. Ins. Co.*, 516 S.W.2d 739, 740 (Tex.Civ.App.— Beaumont 1974, writ ref'd n.r.e.). Article 5.06–1 does not prevent insureds from taking on known risks associated with uninsured/underinsured motorists. This Court has held that article 5.06–1 expresses the legislative intent *not* to guarantee uninsured/underinsured coverage in every case. *Farmers Texas County Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861, 864 (Tex.App.— Dallas 1993, writ denied). The legislature also provided that, although the parties are not required to have uninsured/underinsured coverage, when, through a meeting of the minds they agree not to have uninsured/underinsured coverage, they must put the agreement not to have coverage in writing. TEX. INS.CODE ANN. art. 5.06–1(1) (Vernon 1981).

If the legislature wishes to expand the law so that reformation under these circumstances is not a proper remedy, thus limiting the contracting parties' contractual freedoms, then it should do so, but this Court should not take it upon itself to expand the law beyond the plain language of the statute.

The Texas Supreme Court has stated that one of the purposes of article 5.06–1 was to protect the conscientious and thoughtful motorist against losses caused by negligent, financially irresponsible motorists. *Francis v. International Serv. Ins. Co.*, 546 S.W.2d 57, 61 (Tex.1976). In this case, the choice of whether or not to have the coverage was solely under Palestine's control. Palestine decided not to have the uninsured/underin-

---

**2.** The *Unigard* court stated in dicta that its holding also applied to article 5.06–1 since the public policy aspects of the two coverages are so similar. *Unigard*, 572 S.W.2d at 308.

sured coverage. If Howard was under the false impression that Palestine did have that coverage, he could pursue an action against Palestine. Under the majority opinion, Howard has received a windfall. Palestine rejected coverage and did not pay premiums for the coverage, and INA did not collect premiums for the coverage.

Reformation is an equitable remedy that should be used sparingly. However, when the facts are clear and both parties are in agreement, as in this case, the courts should have the ability to reform contracts to reflect the true contract made between the parties. Because I believe that INA and Palestine, the two parties to the contract, effectively reformed their contract for insurance to reject the uninsured/underinsured coverage, I would overrule Howard's points of error. I would affirm the trial court's judgment that the uninsured/underinsured coverage was not in effect at the time of the accident.