# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 21, 2014 Session

## GUNNAR C. SKARBREVIK, ET AL. V. PERSONAL REPRESENTATIVE OF ESTATE OF CAROLYN E. BROWN

### Appeal from the Circuit Court for Shelby County
No. CT00543610     Donna M. Fields, Judge

### No. W2014-00809-COA-R3-CV – Filed November 16, 2015

An employee, who was injured in an accident with an uninsured motorist while on company business and while driving an automobile owned by his wife, sought to recover for his injuries through the uninsured motorist provision of his employer's business automobile policy. The insurer denied coverage, asserting that the policy only provided coverage for automobiles owned by the company. The trial court granted the employee's motion for partial summary judgment, holding that an endorsement to the policy which added employees using non-company vehicles on company business to the liability coverage operated to make those employees "insured" for purposes of the uninsured motorist coverage. Insurer appeals; finding no error in the trial court's interpretation of the policy, we affirm the judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Alan Mark Sowell and William H. Tate, Nashville, Tennessee, for the appellant, Zurich North American Insurance Company.

J. Houston Gordon and Amber Nicole Griffin Shaw, Covington, Tennessee, for the appellees, Gunnar C. Skarbrevik and Linda Skarbrevik.

## OPINION

On November 8, 2009, Gunnar Skarbrevik, a resident of Texas, was involved in an accident with Carolyn Brown on Interstate Highway 240 in Shelby County, Tennessee;

Ms. Brown was driving her vehicle at a high rate of speed in the wrong direction on the highway, thereby causing the collision. Ms. Brown, who was inebriated and driving under the influence of drugs, was killed in the accident; Mr. Skarbrevik suffered injuries which required extensive surgeries and rehabilitation and which are permanent. At the time of the accident, Mr. Skarbrevik was driving an automobile owned by and titled to his wife, Linda, and was on the business of his employer, LifeTouch, Inc.

On November 4, 2010, the Skarbreviks filed suit in Shelby County Circuit Court against Ms. Brown's estate to recover for their injuries and damages; because Ms. Brown was uninsured at the time of the accident, summons was served upon Zurich American Insurance Company, which had issued a business automobile policy to LifeTouch which included uninsured motorist coverage.[1] In due course Zurich answered the complaint; the answer pled the affirmative defense that the policy only provided uninsured motorist coverage for automobiles owned by LifeTouch. Shortly thereafter, Zurich filed a motion for summary judgment asserting that, since Mr. Skarbrevik was not driving an automobile owned by LifeTouch at the time of the accident, he was not entitled to uninsured motorist coverage. Plaintiffs responded to the motion and, after argument, the court denied Zurich's motion.

Plaintiffs then moved for partial summary judgment, contending that an "Employees as Insureds" endorsement to the business automobile policy (herein "the EAI endorsement") had the effect of providing additional, non-owned automobile liability coverage, thereby triggering a Texas statute, Texas Ins. Code Ann. § 1952.101, which imposed uninsured coverage by operation of law. Zurich responded to the motion and, after argument, the court granted the motion, directing entry of a final judgment as to plaintiffs' claim for coverage. Zurich appeals; the sole issue presented is whether, under the facts presented, Mr. Skarbrevik is entitled to the benefit of the uninsured motorist coverage under the policy issued to LifeTouch.

## STANDARD OF REVIEW

This case was resolved on a motion for summary judgment, which is an appropriate vehicle for resolving a case where a party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The parties do not contend that there is a genuine issue of material fact which would preclude the grant of summary judgment; consequently, the issue before this court is a question of law which we review *de novo*, affording no presumption of correctness to the trial court's conclusions. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005).

---

[1] The Skarbreviks received $25,000 from the uninsured motorist coverage of their personal automobile liability policy. No issue is raised in this appeal regarding the payment from their personal policy.

## ANALYSIS

In the order granting plaintiffs' motion for partial summary judgment, the court made the following findings of fact pertinent to the issues involved in this appeal:[2]

1. Plaintiff, Gunnar C. Skarbrevik, on November 8, 2009, while traveling interstate 240 in Memphis, Shelby County, Tennessee, was involved in an automobile wreck with an uninsured motorist, Carolyn Brown, resulting in severe bodily injury, further resulting in medical bills, lost income and other economic damages exceeding $25,000, irrespective of non-economic damages.

  ***

3. Gunnar C. Skarbrevik, on November 8, 2009, was an employee of LifeTouch, Inc., and was on or about the business of his employer.

4. On November 8, 2009, while on or about the business of his employer, LifeTouch, Inc., Plaintiff, Gunnar C. Skarbrevik, was driving a 2008 Mercury Mountaineer owned by his wife, Linda Skarbrevik, on Interstate 240 in Memphis, Shelby County, Tennessee.

5. The 2008 Mercury Mountaineer driven by Plaintiff Skarbrevik was registered and garaged in Texas.

  ***

8. Defendant, Carolyn E. Brown, was an uninsured motorist.

  ***

10. LifeTouch, Inc., Gunnar C. Skarbrevik's employer, purchased a Business Automobile Policy providing nationwide coverage from Zurich American Insurance Company, policy No. BAP5346525 - 04, which was in effect on November 8, 2009.

---

[2] The undisputed facts set forth in the order were taken from Plaintiffs' Statement of Undisputed Facts; unless otherwise noted herein, the statements were either admitted or not disputed by Zurich in its response. The trial court did not consider that those statements which were not specifically admitted or which were disputed precluded summary judgment; Zurich does not contend on appeal that there are questions of material fact.

11.  LifeTouch, Inc., the named insured under the policy issued by Zurich American, obtained a national policy, including all endorsements and selection/rejection forms for uninsured motorist coverage in each state, which were made part of the policy.

12.  Zurich policy number BAP5346525 - 04 provided liability and, by endorsement, provided uninsured/underinsured motorist coverage in all 50 states.

13.  As shown in these endorsements and forms, no "Named Insured" under the policy rejected, in writing, uninsured motorist coverage for the state of Texas.[3]

14.  As to automobiles garaged in Texas, there is no rejection of uninsured motorist coverage signed in writing by any named insured. See, Tex. Ins. Code Ann. § 1952.101.[4]

15.  Carolyn E. Brown, the driver of the vehicle that collided with Gunnar C. Skarbrevik, was negligent and her negligence was the proximate cause of Gunnar C. Skarbrevik's injuries and damages.

16.  The business auto coverage under the policy was specifically modified by the "Employees As Insureds" endorsement, attached as Exhibit G, Section II ─ Liability Coverage, paragraph A.1, *Who is an Insured,* through the following language: "any 'employee' of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs."[5]

17.  Gunnar C. Skarbrevik, as an employee of LifeTouch, Inc., while operating a vehicle not owned by Lifetouch, Inc., but while on or about the business of his employer, was an insured.[6]

---

[3] Zurich's response was: "Zurich admits there was no rejection, in writing, of uninsured motorist coverage for the State of Texas, but asserts it may validly restrict UM coverage to designated persons."

[4] Zurich's response was: "Zurich admits there was no rejection of uninsured motorist coverage signed in writing. Zurich denies this is required for non-owned autos by Texas Insurance Code Annotated Section 1952.101."

[5] Zurich's response was: "Zurich admits that the liability coverage was modified by the 'Employees As Insured' endorsement. Zurich disputes that this endorsement has any relevance on uninsured motorist coverage for the plaintiff."

[6] Zurich's response was: "Disputed. Zurich does not dispute that the plaintiff was an insured for liability coverage, but Zurich denies that the plaintiff was an insured for uninsured motorist coverage."

18.    Pursuant to the "Employees As Insureds" endorsement which added language to the Business Auto coverage under the policy, Section II, Liability Coverage, paragraph A.(l) *"Who Is An Insured"* provision, Gunnar C. Skarbrevik, as an employee, while on or about the business of his employer, LifeTouch, Inc., and using a vehicle that was not owned by LifeTouch, Inc., was an "insured." Therefore, Gunnar C. Skarbrevik, as an employee of LifeTouch, Inc., was an insured under the policy purchased by his employer.[7]

19.    The named insured shown in the declarations of policy No. *BAP534-6525* - 04 is LifeTouch, Inc.

20.    Tex. Ins. Code Ann. § 1952.101 applies to this Policy, since motorist coverage is issued for Texas, and the automobile used by Plaintiff, Gunnar C. Skarbrevik, was garaged and registered in Texas.

Construing the EAI[8] endorsement together with the Business Auto Coverage Form, the court concluded:

The Court finds that the "Employees As Insureds" endorsement modified the business auto coverage under the policy. As a result, "any" employee of LifeTouch, Inc. became an "insured" while using a covered "auto" when

---

[7] Zurich's response was: "Disputed as phrased. Zurich admits that pursuant to the "Employees As Insured" endorsement Gunnar C. Skerbrevik, as an employee, while on or about the business of his employer, LifeTouch, Inc., and using the vehicle that was not owned by LifeTouch, Inc., was an insured for liability coverage only under the policy."

[8] The EAI endorsement states:

EMPLOYEES AS INSUREDS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the Section II - Liability Coverage, Paragraph A.1. Who Is An Insured Provision:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

5

LifeTouch, Inc. did not own, hire or borrow the vehicle in its "business" or its "personal affairs."

The court then applied Texas Ins. Code Ann. § 1952.101, entitled "Uninsured or Underinsured Motorist Coverage Required" and held that Mr. Skarbrevik was entitled to the uninsured motorist protection provided in the policy.

Zurich appeals, contending that the uninsured motorist coverage is not available since Mr. Skarbrevik was not driving a "covered auto", i.e., one owned by LifeTouch; Zurich also contends that the EAI endorsement only applies to liability coverage. Mr. Skarbrevik shifts the focus of the inquiry from "covered auto" to "insured" and argues that the addition of the phrase "while using a covered auto [LifeTouch] doesn't own, hire or borrow in [its] business or personal affairs" to the definition of "insured" to the business auto coverage had the effect of expanding the uninsured motorist coverage to the circumstances presented.

The resolution of these contentions calls for us to construe the policy and various endorsements. As noted in *Fletcher v. White*:

> Generally, the rules of contract construction apply to insurance contracts. Insurance contracts should be construed so as to give effect to the intention and express language of the parties. In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning.

No. E2009-01199-COA-R3-CV, 2010 WL 3715624, at *3 (Tenn. Ct. App. Sept. 22, 2010) (internal citations omitted). In addition, "[a]ll provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn. 1999) (*citing Rainey v. Stansell,* 836 S.W.2d 117, 118-19 (Tenn. Ct. App. 1992). We are also mindful of the following instruction:

> Insurance contracts are subject to the same rules of construction and enforcement as contracts generally. In the absence of fraud or mistake, they should be interpreted as written, and their terms should be given their natural and ordinary meaning. Because insurers are strictly accountable for the language in their contracts, ambiguous language will be construed against the insurer and in favor of the insured. Insurance policies should be construed as a whole in a reasonable and logical manner.

*Standard Fire Ins. Co. v. Chester O'Donley & Associates, Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998) (internal citations omitted).

The Zurich policy includes a "Schedule of Coverages and Covered Autos"[9]; the policy identifies covered autos for purposes of uninsured motorist coverage as follows:

> Owned "autos" only      Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to the power units you own). This includes those "autos" you acquire ownership of after the policy begins.

The uninsured motorist coverage endorsement (the "uninsured endorsement") modifies the Business Auto Coverage Form by providing uninsured/underinsured coverage for "covered autos," defined in the uninsured endorsement as "[a]ny 'auto' owned by the Named Insured"[10]; an additional definition in the uninsured endorsement expands "covered auto" to include an "'auto'[o]wned or leased by the Named Insured."[11] The "Coverage" portion of the uninsured motorist endorsement pertinent to our analysis states:

> We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily

---

[9] The various coverages under the policy, e.g., liability, personal injury protection, physical damage comprehensive, etc., are not available to all "covered autos." Item Two of the Business Auto Declarations provides that:

> This policy provides that only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more symbols from the Covered Auto Section of the Business Auto Coverage Form next to the name of the coverage.

[10] The endorsement is applicable to "'covered auto[s]' licensed or principally garaged in, or 'garage operations' conducted in, Texas.'"

[11] The endorsement includes the following Section:

F. Additional Definitions
    The following are added to the Definitions Section and have special meaning for Uninsured/Underinsured Motorists Insurance:
  1. "Covered auto" means an "auto";
    a. Owned or leased by the Named Insured; or
    b. While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, "loss" or destruction.
    Liability coverage of this policy must apply to the "covered auto."
    "Covered auto" includes "autos" (described in a. or b. above) for which Uninsured/Underinsured Motorists Insurance has not been rejected in writing.

injury" sustained by an "insured" or "property damage" caused by an "accident."

Mr. Skarbrevik contends that the following language in the EAI endorsement, made him an "insured" for liability purposes while driving his Wife's automobile on LifeTouch's business, and through application of Tex. Ins. Code Ann. § 1952.101, had the effect of extending uninsured coverage protection to him:

The following is added to the Section II - Liability Coverage, Paragraph A.1. Who Is An Insured Provision:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

Considering the business policy and various endorsements, and consistent with the applicable statutes, we agree that uninsured coverage was available to Mr. Skarbrevik.

Tex. Ins. Code Ann. § 1952.101 provides:

(a) In this section, "uninsured or underinsured motorist coverage" means the provisions of an automobile liability insurance policy that provide for coverage in at least the limits prescribed by Chapter 601, Transportation Code, that protects insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles damages for bodily injury, sickness, disease, or death, or property damage resulting from the ownership, maintenance, or use of any motor vehicle.
(b) An insurer may not deliver or issue for delivery in this state an automobile liability insurance policy, including a policy provided through the Texas Automobile Insurance Plan Association under Chapter 2151, that covers liability arising out of the ownership, maintenance, or use of any motor vehicle unless the insurer provides uninsured or underinsured motorist coverage in the policy or supplemental to the policy.
(c) The coverage required by this subchapter does not apply if any insured named in the insurance policy rejects the coverage in writing. Unless the named insured requests in writing the coverage required by this subchapter, the insurer is not required to provide that coverage in or supplemental to a reinstated insurance policy or renewal insurance policy if the named insured rejected the coverage in connection with that insurance policy or an insurance policy previously issued to the insured by the same insurer or by an affiliated insurer.

In *Howard v. INA County Mut. Ins. Co*., 933 S.W.2d 212 (Tex. App. 1996), the Texas Court of Appeals was called upon to consider the written rejection exception to

Texas Insurance Code Art. 5.06-1, the predecessor to Tex. Ins. Code Ann. § 1952.101.[12] The plaintiff in *Howard*, while driving a company vehicle and on company business, was injured in an automobile accident with an uninsured motorist; the employee made a claim for UM/UIM coverage under his employer's commercial automobile policy. Because the insured's vice-president did not specifically accept or reject the UM/UIM coverage on the original coverage selection form, the insurer treated the employer as having rejected the coverage and denied the claim. On appeal, the trial court's grant of summary judgment to the insurer was reversed. Significant to our analysis in this case is the following language:

> This Court has recognized the legislature's purpose of protecting conscientious, insured motorists from financial loss caused by negligent, financially irresponsible owners and operators of uninsured and underinsured motor vehicles. By enacting article 5.06-1, the legislature declared that the public policy of this State requires UM/UIM coverage be made a part of every automobile liability insurance policy issued, subject to only limited exception. The statute's limited exception provides for rejection of UM/UIM coverage; however, the insured must reject the coverage in writing. . . . Courts must liberally construe article 5.06-1 to give full effect to the public policy broadly requiring UM/UIM coverage. Because of its remedial purpose and as a corollary to the courts' liberal interpretation effecting UM/UIM coverage, the written rejection exception to article 5.06-1's general rule should be strictly construed to protect the insured. Thus, absent a written rejection, every automobile liability policy of insurance delivered in this State includes UM/UIM coverage by operation of law.

933 S.W.2d at 218 (internal citations omitted).

The EAI endorsement included Mr. Skarbrevik within the class of persons who were insured by the Zurich policy for liability purposes, when driving his wife's vehicle on company business.[13] Texas Ins. Code Ann. § 1952.101(b) mandates that an

---

[12] As part of revisions to the Texas Insurance Code contained in Acts 2005, 79th Leg., Ch. 727, Art. 5.06-1 of the Texas Insurance Code was repealed and became the source for Tex. Ins. Code Ann. § 1952.101, effective April 1, 2007. *See* Texas Legislative Council, A NONSUBSTANTIVE REVISION OF STATUTES RELATING TO SOLVENCY OF INSURERS, PROPERTY AND CASUALTY INSURANCE, OTHER TYPES OF INSURANCE COVERAGE, AND UTILIZATION REVIEW AND INDEPENDENT REVIEW, at p. 896-99 (2005), available at
http://www.lrl.state.tx.us/scanned/statutoryRevision/RevisorsReports/Insurance/Insurance_Code_Report_submitted_to_the_79th_Legislature.pdf

[13] The "Schedule of Coverages and Covered Autos" in the Business Auto Declarations identifies symbol 1 from the Covered Auto Section of the Business Auto Coverage Form for liability coverage; that form has the following entry for symbol 1: "Any 'Auto'".

automobile liability insurance policy provide uninsured motorist coverage "that protects insureds who are legally entitled to recover from owners or operators of uninsured motor vehicles." Due to his coverage as an "insured" under the policy for liability purposes, Mr. Skarbrevik was entitled to the uninsured motorist coverage imposed by statute. To adopt Zurich's insistence that the modification to the policy created by the EAI endorsement did not expand the uninsured coverage beyond the "covered autos" designated for uninsured coverage is contrary to the mandate of the statute and public policy and would require us to adopt an interpretation of the policy, taken as a whole, that would be illogical and inconsistent with the liberal construction of the statute.

Accordingly, we affirm the judgment of the trial court and remand the case for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE