**AFFIRMED; Opinion Filed June 16, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00763-CV

**SPY, INC., DENO SPYROPOULOS, AND GINA SPYROPOULOS, Appellants**
**V.**
**SC LEGACY INDEPENDENCE, LTD., AND WEITZMAN MANAGEMENT CORP.,**
**Appellees**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-05080-2013**

## MEMORANDUM OPINION

Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Myers

This appeal arises from a landlord–tenant dispute. Spy, Inc., Deno Spyropoulos, and Gina Spyropoulos ("Spy") appeal the granting of SC Legacy Independence, Ltd. and Weitzman Management Corp.'s ("Legacy") motion for summary judgment and the denial of Spy's motion for summary judgment. The trial court's judgment ordered that Spy owed rent to Legacy and ordered that Spy take nothing on the counterclaims for indemnity against Legacy. Spy brings three issues on appeal contending the trial court erred by (1) granting Legacy's traditional motion for summary judgment on its claim for rent, (2) denying Spy's motion for summary judgment concerning the commencement date for payment of rent, and (3) granting Legacy's motion for summary judgment on Spy's counterclaim for indemnification. We affirm the trial court's judgment.

# BACKGROUND

SC Legacy owns a shopping center, and Weitzman Management is the management company for the shopping center. In February 2011, Legacy and Spy, Inc. entered into a lease agreement. The lease stated the tenant was Spy, Inc. and its trade name was "Deno's Bar & Grill." The commencement date of the lease was "180 days after the Demised Premises is 'turned over to Tenant for finish-out' on or about June 1, 2011." The "Permitted Use" under the lease was "dine-in/take-out/delivery American/Greek restaurant and full service bar." The lease was for a term of seven years and eight months. The lease provided for payment of the first month's rent at the time of signing but there would be no rent due for the second through ninth months of the lease. The Spyropouloses guaranteed Spy, Inc.'s performance of the lease.

Before Spy completed the finish-out of the premises, a dispute arose with another tenant, Progressive Child Care Systems, Inc. Progressive had a "reciprocal easement agreement" with Legacy. Section 6.3(o) of that agreement prohibited the operation in the shopping center of "[a]ny bar, tavern, dance hall, night club, disco or lounge, a restaurant whose annual gross revenues from the sale of alcoholic beverages exceeds fifty percent (50%) of gross revenues arising out of or resulting from such business . . . ." Progressive complained that Spy's operation of a full service bar would violate this agreement. In March 2012, Progressive sued Spy and Legacy seeking an injunction prohibiting the operation of a bar in the shopping center.

On April 26, 2012, while the lawsuit with Progressive was ongoing, Spy and Legacy entered into a settlement agreement that included an amendment to the lease. The settlement agreement provided that Legacy would pay Spy $110,334.76 and would pay an additional $11,000 to Spy's law firm. The settlement agreement and the amendment to the lease provided the name of the restaurant would be "Deno's," eliminating the words "Bar & Grill" from the name. The settlement agreement and the amendment to the lease changed the permitted use by

deleting "full service bar" and providing that the gross annual revenue from the sale of alcoholic beverages would not exceed fifty percent of the total gross annual revenue generated by the premises. The settlement agreement and amendment to the lease also provided that the "Commencement Date" of the lease would be June 1, 2012, provided that if Spy were "legally restrained from using the Demised Premises as a result of the pending 'Lawsuit'" with Progressive, then the commencement date would be abated until the legal restraint was terminated. The settlement agreement also provided for indemnification and releases.

On June 12, 2012, the trial court in the Progressive lawsuit signed a temporary injunction ordering Legacy and Spy not to open, use, or operate "a business which contains any bar" at the shopping center. On August 22, 2012, the trial court signed a second temporary injunction. This order required Spy and Legacy "to desist and refrain from violating Section 6.3 and specifically Subsection (o)" of the reciprocal easement agreement. Although the second temporary injunction did not say it was an amendment to the first temporary injunction, Spy states in its summary judgment motion and responses that the second temporary injunction amended the first temporary injunction.

Spy opened the restaurant on November 28, 2012 and operated continuously until at least the date of the trial court's judgment. However, Spy paid no rent to Legacy during that time.

In December 2013, Legacy filed suit against Spy, Inc. for unpaid rent due under the lease and sued the Spyropouloses on their guaranties. Spy filed counterclaims for declaratory judgment seeking declarations that the commencement date of the contract has not yet occurred and for breach of contract by Legacy's demanding payment for rent before the commencement of the lease. Legacy also filed a claim for declaratory judgment seeking a declaration of the commencement date of the lease. Both sides moved for summary judgment. The trial court granted Legacy's motion for summary judgment and denied Spy's motion. The court declared

–3–

the commencement date of the lease was November 28, 2012. The court awarded Legacy damages of $101,998.36 for the rent and other charges due from November 28, 2012 through March 31, 2015, and $5,141.63 per month after March 31, 2015. The court also awarded Legacy its attorney's fees. The court ordered that Spy take nothing on its counterclaims.

## SUMMARY JUDGMENT

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.,* 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Flood*, 294 S.W.3d at 762. When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.

–4–

2005)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 862 (Tex. 1993); *Howard v. INA Cnty. Mut. Ins. Co.*, 933 S.W.2d 212, 216 (Tex. App.—Dallas 1996, writ denied). Neither party can prevail because of the other's failure to discharge its burden. *Guynes*, 861 S.W.2d at 862; *Howard*, 933 S.W.2d at 216. When both parties move for summary judgment, we consider all the evidence accompanying both motions in determining whether to grant either party's motion. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented. *Id.* The reviewing court should render the judgment that the trial court should have rendered. *Id.* When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Id.*

## CONTRACT INTERPRETATION

When construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We consider the entire writing and attempt to harmonize and give effect

to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *J.M. Davidson*, 128 S.W.3d at 229. The court should consider that the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." *Parts Indus. Corp. v. A.V.A. Servs., Inc.*, 104 S.W.3d 671, 678 (Tex. App.—Corpus Christi 2003, no pet.).

## BREACH OF THE LEASE

In the first issue, Spy contends the trial court erred by granting Legacy's traditional motion for summary judgment. Legacy moved for summary judgment on its claim that Spy breached the lease by failing to pay rent during the time it used the leased premises to operate a restaurant. The parties' differences concern whether Legacy performed its contractual obligations under the lease and the commencement date of the lease regarding when Spy was required to begin paying rent. In the second issue, Spy contends the trial court erred by denying its motion for summary judgment on its declaratory judgment claim seeking a declaration that the commencement date of the lease is the date that Progressive's lawsuit is finally dismissed.

Central to both issues is the question of when the lease, by its terms, commenced. The lease as amended stated:

> The "Commencement Date" of the Lease shall be June 1, 2012; provided however, should Tenant be legally restrained from using the Demised Premises as a result of the pending "Lawsuit" as referred in the Settlement Agreement and Mutual Release of even date herewith between Landlord and Tenant, the "Commencement Date" will be abated until the legal restraint is terminated and Tenant can use the Demised Premises in accordance with the Lease.

The parties disagreement concerns whether Spy was "legally restrained from using the Demised Premises as a result of the pending 'Lawsuit.'"

Spy argues that Progressive's pending lawsuit restrained it from using the premises. Spy asserts that Legacy promised Spy it could use the premises to operate a bar and that the

injunction barred it from doing so. We disagree. The lease, as amended, did not include the operation of the bar in the permitted uses for the property.

Spy also argues that the use of the property included the right to sublease the property or to assign the lease if Spy sold the business. Spy asserts that the lawsuit and injunction prevent it from representing with certainty the permitted uses under the lease. We disagree. The lease, as amended, contained the same permitted use as was contained in the second injunction. Spy does not explain how those documents created uncertainty concerning the permitted uses under the lease. Gina Spyropoulos testified in her affidavit that she and her husband considered selling the restaurant, but business brokers were not interested in listing the restaurant because of Progressive's lawsuit and the uncertainty that the restaurant could include the bar. However, the brokers' reluctance to list the restaurant was not a legal restraint on selling the restaurant.

Spy also argues the amendment to the lease made the commencement of the lease contingent and dependent upon the termination of Progressive's lawsuit and the second injunction. We disagree. The amended lease made the commencement of the lease contingent upon Spy's not being "legally restrained from using the Demised Premises" because of Progressive's lawsuit. The summary judgment evidence in this case establishes that Spy was not legally restrained from using the property due to Progressive's lawsuit and that the commencement date of the lease was no later than November 28, 2012 when Spy opened the restaurant.

Because the lease commenced no later than November 28, 2012, the summary judgment evidence conclusively established Spy breached the lease by failing to pay rent. Likewise, the evidence established that Legacy did not breach the lease by demanding Spy pay rent. We conclude Spy has not shown the trial court erred by granting Legacy's motion for traditional

summary judgment and by denying Spy's motion for summary judgment. We overrule the first and second issues.

## INDEMNIFICATION

In the third issue, Spy contends the trial court erred by granting Legacy's no-evidence motion for summary judgment on Spy's counterclaims alleging Legacy breached the indemnification provision of the settlement agreement. The settlement agreement between Legacy and Spy provided:

> Landlord . . . agrees to hold harmless Tenant . . . and indemnify and defend Tenant . . . from any claim, . . . lawsuit, losses, damages, and expenses, whether known or unknown, and to compensate and pay Tenant . . . for any and all losses, damages or expenses, (including attorneys' fees and costs incurred by Tenant should Landlord not provide a defense of the Tenant) resulting from any claim, . . . or lawsuit, ever asserted or arising out of or relating to the [Progressive] Lawsuit and/or the Easement [the Reciprocal Easement Agreement]. Examples of Tenant's losses, damages and expenses include but are not limited to, damages to be paid by Tenant arising out of the Lawsuit or Landlord's breach of the Easement; actual costs incurred by Tenant under the Lease for planning, designing, constructing and equipping the Demised Premises; Tenant's relocation and new planning, design, construction and equipment costs; lost profits; and attorneys' fees and costs.

In its counterclaim, Spy alleged Legacy had "failed and refused to perform all of the financial obligations required by the indemnification agreement set out in the Settlement Agreement."

In its motion for summary judgment, Legacy asserted there was no evidence Legacy breached the settlement agreement and the amended lease, Spy had no evidence of its performance under the settlement agreement and the amended lease, and Spy had no evidence of its injuries. In response, Spy relied on the affidavit of Gina Spyropoulos:[1]

> 18. Legacy owes Spy $17,182.37 for out of pocket expenses relating to payroll and operating expenses and additional construction costs for tables and booths. Despite demands by Spy, this amount has yet to be paid by Legacy. Also, Spy has lost profits in the operation of our business because of the [Progressive]

---

[1] In its response to the no-evidence motion for summary judgment, Spy also cited to Spy and Legacy's joint responses to requests for disclosure in the Progressive lawsuit. On appeal, Spy does not refer to or cite that document. Accordingly, we do not consider it.

Lawsuit. This has been caused by the effects of the [Progressive] Lawsuit. The amount of lost profits is at least $197,679.77.

19. Further, in the event that Spy is forced to shut down due to the [Progressive] Lawsuit, Legacy will be obligated under the indemnification provision of the Settlement Agreement to pay Spy for its lost investment of $636,194.13.

Concerning Spy's claim for out-of-pocket expenses of $17,182.37, Spy was entitled to indemnification for these amounts if they resulted from the Progressive lawsuit. The affidavit testimony provides no evidence of how these expenses resulted from the lawsuit. Therefore, Spy has no evidence that Legacy breached the settlement agreement by failing to pay Spy for these expenses.

Concerning Spy's claim for lost profits, the mere recitation of an amount of lost profits is not sufficient to constitute evidence of lost profits. To prove lost profits,

> [t]he amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. A[t] a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992) (citations omitted). The summary judgment evidence provides no showing of the "objective facts, figures, or data from which the amount of lost profits can be ascertained." Accordingly, it constitutes no evidence of lost profits. *See id.*

Concerning Spy's claim for the return of its investment in the restaurant of $636,194.13 in the event that the restaurant failed, the record does not show that the restaurant had failed when the trial court rendered its judgment.[2]

---

[2] Spy states in its appellants' brief that it continuously operated the restaurant "from November 28, 2012 to the point in time when a judgment was rendered in the instant lawsuit." Legacy states in its brief that Spy operated the restaurant for about two years. However, neither Spy nor Legacy cite evidence in the record showing the restaurant is no longer operating.

Concerning the claims for attorney's fees, the indemnification agreement required Legacy to pay Spy's attorney's fees "should Landlord not provide a defense of Tenant." Spy presented no evidence that Legacy had not provided it a defense.

We conclude Spy failed to present evidence that Legacy breached the indemnity provision of the settlement agreement. Therefore, the trial court did not err by granting Legacy's no-evidence motion for summary judgment on Spy's counterclaims. We overrule Spy's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

150763F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SPY, INC., DENO SPYROPOULOS, AND
GINA SPYROPOULOS, Appellants

No. 05-15-00763-CV    V.

SC LEGACY INDEPENDENCE, LTD.,
AND WEITZMAN MANAGEMENT
CORP., Appellees

On Appeal from the 429th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 429-05080-2013.
Opinion delivered by Justice Myers. Justices
Stoddart and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees SC LEGACY INDEPENDENCE, LTD., AND WEITZMAN MANAGEMENT CORP. recover their costs of this appeal from appellants SPY, INC., DENO SPYROPOULOS, AND GINA SPYROPOULOS.

Judgment entered this 16th day of June, 2016.